### FORD v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 13, 1919.)

No. 5179.

1. CRIMINAL LAW ⬤⟞1186(1)—EVIDENCE—TESTIMONY GIVEN UNDER DURESS.
    Where testimony vital to conviction is given under duress, no conviction based thereon will be permitted to stand.

2. CRIMINAL LAW ⬤⟞369(6)—EVIDENCE—SEPARATE OFFENSE.
    In a prosecution for unlawful introduction of liquor into a state, evidence tending to show that defendant was also concerned in another attempted introduction of liquor on the same night held inadmissible.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Criminal prosecution by the United States against Tom Ford. Judgment of conviction, and defendant brings error. Reversed.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Guy H. Sigler, of Ardmore, Okl., for plaintiff in error.

C. W. Miller, Sp. Asst. U. S. Atty., of Muskogee, Okl. (W. P. Mc-Ginnis, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. Writ of error from conviction for introducing liquor into Oklahoma. The conviction is challenged upon three grounds: Insufficiency of evidence; wrongful admission of evidence concerning a wagon loaded with whisky; and the claim that the charge to the jury placed the burden of proof upon the defendant, or did not require the jury to be convinced beyond a reasonable doubt of his guilt.

The uncontradicted evidence is as follows: Ford resided in Ardmore, Okl., about 28 miles from Tuck's Ferry across Red river. Early on May 18, 1917, he had crossed with an automobile at this ferry into Texas. Shortly after midnight he was ferried back to the Oklahoma shore, his car remaining there for about an hour and a half, while he and the ferryman, Henry Tuck, went a short distance up the river, where they procured several fish. He then proceeded toward Ardmore, until arrested a short distance from the ferry. Two pints of whisky, six bottles of beer, and some fish were found in the car at the time of arrest. The real issue of fact in the case was whether the liquor thus found in the car had been brought across the ferry from Texas, or whether it had been procured from a fisherman on the Oklahoma side of the river when defendant went for the fish. Defendant swore he had bought the liquor from the fisherman. Tuck swore that no liquor had been so purchased. Such contradictory testimony might sustain a verdict either way.

[1] We are asked, however, to consider in this connection a matter of considerable gravity. Defendant urges that the damaging testimony of Tuck cannot be accepted, because his evidence was given under duress. The witness Tuck testified that he had tried "the best you could" to help out defendant; that he had borrowed money from defendant; that he had told counsel for defendant the morning of the trial that the liquor had been bought from the fisherman; that he had told the marshal later that day the same thing; that he had been then arrested and put in jail by a deputy marshal; that he supposed the cause of his arrest was for telling the marshal that the liquor had been so bought; that such was not the fact; that defendant had offered him money to swear that it was so bought; that he had agreed to the bribe. He was then asked, by counsel for defendant:

"Q. If the United States marshal had not arrested you and put you in jail, would you go on the witness stand and have sworn what you told me this morning? A. No; I guess not."

The deputy marshal testified, in cross-examination by defendant, as follows:

"Q. Now, isn't it a fact that since Mr. Tuck has come here to this trial that you have discovered that Mr. Tuck wasn't testifying like you wanted him to,

*and that you have had him* arrested? A. I discovered that he wasn't testifying as to what he told me the morning I arrested Ford.

"Q. Then you had him arrested for the purpose of forcing him to testify in this case favorably to the government? A. Not for the purpose of forcing him; had him arrested.

"Q. What was it that you had him arrested for, Mr. Hignight? A. Because he didn't tell me as he told me that morning, me and Mr. Smith.

"Q. In other words, you had him arrested because he didn't tell you out there in the marshal's office the same story that he told you and Mr. Smith down there at the ferry? A. Yes, sir.

"Q. That is the charge you filed against him? A. Yes, sir.

"Q. And had him put in jail? A. Yes, sir.

"Q. He wasn't under oath when he talked to you the other time was he? A. No, sir.

"Q. What did you charge him with? A. Introducing whisky.

"Q. Introducing whisky? A. Yes, sir.

"Q. You filed that charge of introducing whisky against him to force him to testify here to-day, didn't you? A. Not to force him; no, sir.

"The Court: Q. Did you believe, Mr. Hignight, from the statement that he made to you now, that, if that statement was true, he was guilty of introducing liquor himself? A. The one that he told me to-day; yes, sir.

"Q. And when he told you that story, you filed a charge of introducing against him? A. Yes, sir; on recommendation of the attorney.

"Mr. Sigler: Q. Is that the reason you filed that charge of introducing, because of what he told you here to-day? A. Yes, sir.

"Q. Well, you knew all the facts of the case when he told you down there a year ago, didn't you? A. I didn't know the facts what he told you with reference to the signal the man with the car was to give the man that had the load of whisky.

"Q. Well, if he had come here now and testified what he told you a year ago, you wouldn't have filed that charge of introducing against him, would you? A. If he told me like he did at the start; no, sir.

"Q. The reason, then, that you filed the charge against him was because he didn't tell you to-day what he told you a year ago? A. Yes, sir; what he told me that morning."

Defendant's counsel challenges denial of the statement that, immediately after giving his testimony herein, Tuck was released from imprisonment and the charge against him dismissed. The brief of the government is silent as to this entire matter. Thus is apparently presented the spectacle of the witness being bribed by the accused to tell one story, and being held under arrest by the government to force him to tell a different one. It is evident that the motive prompting accused and the motive of the government officials were very different, but the act of each was improper. Each effectually interfered with the ascertainment of truth and the due administration of justice. It is not a question of whether Tuck's testimony, as given, was true or false, but of what would have been his testimony. Where testimony vital to conviction is given under duress, no conviction based thereon will be permitted to stand. We do not say that the evidence of guilt of defendant was of itself insufficient, but we do say that, given under the circumstances here shown, it was in this trial insufficient, and the case must be retried under conditions which will remove this objection.

[2] The second point presented is that certain evidence was improperly admitted. This evidence was that an empty wagon had crossed the ferry from the Oklahoma side early that night, and about 2 o'clock had returned, loaded with whisky, had been taken part way across

on the ferry, and then taken back to the Texas side, where it was shortly after seized by the officers; that the driver said he was waiting for a light signal to be given from the Oklahoma side, and desired to be taken back because he had not received the signal while on the boat. The signal could have been given from or near the road along which defendant intended to travel. All of this testimony strongly suggested that the defendant was connected with this intended unlawful introduction of the wagon load of whisky. While that would have been the same character of crime covered by this indictment· for introducing the liquor found in the automobile, there was no attempt to connect the two. The danger of this kind of evidence is that it is likely to lead the jury aside from the case on trial, confuse the issues, and result in a conviction for acts not included in the indictment. We think the evidence was inadmissible.

The third point relates to the instruction of the court. That part of the instruction referring to the wagon load of whisky would, of course, be eliminated on retrial. The claim that the instruction took from the defendant the benefit of the presumption of innocence, and virtually shifted the burden of proof from the government, is not well taken.

For retrial, in accordance with this opinion, the judgment is reversed.